WARD, Judge.
Romney Kriedt Petrovich appeals a series of judgments rendered on June 26 and June 30, 1987 in separation and divorce proceedings instituted by her husband, Luke A. Petrovich.
Mr. Petrovich filed a petition for separation on the grounds of cruel treatment on November 13, 1985. On that same day, the District Court granted Mr. Petrovich’s ex 'parte motion for joint custody of Mr. and Mrs. Petrovich’s two daughters, aged 5 and 6. The order included a provision that the children remain within Plaquemines Parish. Mr. Petrovich’s petition for separation of November 13, 1985 in which he alleged cruel treatment was defective because he also alleged that he and his wife were living together; he therefore, on December 10, 1985, amended to allege that she had abandoned him. Mrs. Petrovich filed rules requesting a hearing on the issue of joint custody, use of the marital domicile, and the fixing of alimony and child support. In response to these requests, on February 27,1986 a judgment was rendéred ordering the parties to prepare and to submit to the court a joint custody plan which was to allow Mrs. Petrovich physical custody during the school week. The judgment granted her the use and occupancy of the former *413 matrimonial domicile. A separate judgment, rendered that same day, ordered Luke Petrovich to pay to his wife each month $3,820.00 in child support and alimony. The judgment specified that she was to pay the following items: monthly installments for the leased automobile, the house note, and automobile liability and homeowner’s insurance. This judgment was amended on May 5, 1986 on the motion of Mr. Petrovich to provide that the children were not to be taken from Plaquemines Parish for more than one day and to divide the amount of support equally between child support and alimony. On March 6, 1986, Mrs. Petrovich filed a reconventional demand for separation based upon cruel treatment.
Each party having answered the other’s suit for separation, a hearing was held on May 5, 1986 at which both Mr. and Mrs. Petrovich testified as to the alleged grounds for separation: cruel treatment and Mrs. Petrovich’s abandonment of her husband. Following the hearing, negotiations between the parties and their attorneys led to an agreement as to the separation, the partition of the community property, the alimony and ultimately the divorce. This agreement was entered as a stipulation into the record by Mr. Petrovich’s counsel in open court on June 19, 1986. The portions of the stipulation pertinent to the present appeal read:
Mr. Petrovich’s counsel:
Both parties are here, Your Honor. I would like to read the stipulation, if I might, as it affects the support agreement and the community property settlement. And I think the judgment of separation should be contained in one judgment; the support provision should be contained in another judgment, and there should be a judgment of partitioning the community property. And I will prepare the documents and send them to Mr. Freeman. Should there be some dispute concerning the form of the documents or wording, rather than having it fall apart, Your Honor could render the judgment.
The Court:
The stipulation will be the judgment rendered by this Court.
* * * * * *
Mrs. Petrovich’s counsel:
In the event of a discrepancy between the stipulation and the judgment, the stipulation would govern.
The Court:
The Court’s interpretation of the stipulation is going to be left to the Court.
Mrs. Petrovich’s counsel:
Of course.
Mr. Petrovich’s counsel:
This will be the stipulation on support.
Before we get to that, we have agreed to obtain an irreconcilable difference separation. I will read the stipulation concerning support....
The child support judgment rendered by this court will remain the same, and will be carried over into the judgment in accordance with the law of the State of Louisiana.
The divorce will be rendered in Plaque-mines Parish on November 1st — actually, I think we ought to say not November the 1st, but November 14th, 1986.
Mr. Petrovich will file for divorce, and opposing counsel will file an answer, and we will have a motion to set the trial, and they will have the acceptance of service so we can get the judgment on November 14, 1986.
⅜ * * * * *
Judge, the custody of the two minor children shall remain with the restrictions that Your Honor puts in there about the children being removed for more than 24 hours....
After Mr. Petrovich’s counsel finished reading the stipulation, the Judge asked Mr. and Mrs. Petrovich individually whether each understood and agreed with the stipulation. Each responded affirmatively. The Judge then stated:
The Court will make the stipulations the judgment of this court subject to the formal reduction in writing and at *414 which time the court will sign the judgment with respect to those matters.
On November 6, 1986, Luke Petrovich filed a petition for divorce on the grounds of adultery, and in the alternative on the grounds of living a year separate and apart. He requested sole custody of the children. Romney Petrovich answered and reconvened for divorce on the basis of living apart for one year. She sought permanent alimony, joint custody of the children and child support. On the same day that she filed for divorce, Mrs. Petrovich filed a petition to annul, on the grounds of error and fraud, that portion of the June 19,1986 stipulation relative to partition of the community property. Mr. Petrovich responded with a motion to enforce the compromise reflected in the stipulation.
In the meantime, throughout 1986, Mrs. Petrovich filed a series of rules seeking to collect alleged arrearages in child support and alimony and to have her husband held in contempt for failure to pay. On May 11, 1987, Luke Petrovich filed a motion to deposit funds into, the registry of the court, alleging that Mrs. Petrovich had failed to pay the children’s school tuition which was then more than $6,000.00 in arrears. With the motion, Mr. Petrovich deposited checks totalling $11,126.52 into the registry of the court.
On May 15, Mrs. Petrovich filed a request, pursuant to C.C. art. 146(H) and C.C.P. art. 1465, for a mental examination or evaluation of hér husband.
Counsel for both parties agreed to a hearing on June 26,1987 on all outstanding motions and rules, including those mentioned above as well as several others. The four judgments now on appeal all arose from the June 26 hearing.
The first judgment was signed by the Trial Judge at the hearing. Pursuant to the June 19, 1986 stipulation, it provided for temporary alimony and temporary payment of the mortgage on Mrs. Petrovich's residence by Mr. Petrovich and stated, also pursuant to the stipulation, that Mr. Petro-vich would file a petition for divorce on November 1, 1986 and that Mrs. Petrovich would cooperate fully in obtaining the divorce judgment.
On June 30, 1987, the Trial Judge signed three judgments embodying other portions of the stipulation as well as decisions made at the June 26 hearing. The first judgment rendered on June 30 held that Luke Petro-vich was not in contempt for arrearages in support payments; ordered the funds on deposit in the registry of the Court applied toward the children’s 1986-87 tuition and any remaining funds paid toward the mortgage on Mrs. Petrovich’s residence; granted sole custody of the children to Luke Petrovich on the basis of changed circumstances with visitation for Mrs. Petrovich to be set by the Court if the parties could not agree upon visitation; and finally dismissed Mrs. Petrovich’s rule for a mental evaluation of Mr. Petrovich.
The second judgment rendered on June 30, 1987 was a judgment of separation on the grounds of irreconcilable differences in accordance with La.C.C. art. 138(10), and the third judgment was the community property settlement, making as the judgment of the court the June 19,1986 stipulation.
Mrs. Petrovich’s counsel immediately filed an application for supervisory writs asking this Court to review the judgment signed on June 26 and the three judgments signed on June 30. He also filed four suspensive appeals from the four judgments. We initially granted certiorari as to one issue, but then withdrew it, concluding that a full appeal of the several inter-related issues was the better course. We informed the parties that all issues would be considered on appeal.
In her appeals, Mrs. Petrovich assigned seven errors in the Trial Court judgments, but only four assignments of error have been briefed; we deem the remaining three assignments abandoned. The four assignments of error that have been briefed and which are considered in this appeal, state, in the words of counsel for Mrs. Petrovich:
1. Judge Martin erred in ordering Mrs. Petrovich to sign an affidavit of irreconcilable differences.
*415 2. Judge Martin erred in not hearing completely and awarding arrearages of alimony and child support.
3. Judge Martin erred in depriving Mrs. Petrovich of the custody of the two little girls, aged 5 and 7.
4. Judge Martin erred in failing to order a psychiatric or psychological evaluation of Luke Petrovich.
The first assignment of error asserts that the judgment of separation is invalid because it was error for the Trial Judge to order Mrs. Petrovich to sign the affidavit of irreconcilable differences.
At the hearing on June 26,1987, the first matter to be considered was the enforcement of the portion of the June 19, 1986 stipulation which provided that the parties would get an “irreconcilable differences” separation. Counsel for Mr. Petrovich stated that he had prepared documents, as agreed in the stipulation, including a judgment of separation pursuant to C.C. art. 138(10). He further explained that Mrs. Petrovich’s counsel was to prepare the affidavits which the parties would execute in connection with the separation, and although he did not have the affidavits in hand, his client was particularly anxious for the separation judgment to be rendered since he had been waiting for over a year. Counsel for Mrs. Petrovich then stated that his client had “repudiated in its entirety the settlement for the reasons set forth in the suit ... to annul that settlement, namely fraud and ill practices and error.” He then said, however, that subject to the right to proceed to annul and the right to appeal, “[m]y client is prepared to comply with any orders of the Court which are rendered today.”
At that point, the Trial Judge asked counsel to present the separation judgment for his signature. After some discussion, it was decided that the affidavits should be executed prior to the signing of the judgment. Counsel for Mr. Petrovich explained that the affidavits could be prepared during a recess and that the Judge “could order Mrs. Petrovich to sign it.” The following exchange then occurred between Mrs. Petrovich’s counsel and the Judge:
Judge, the posture of the case is that if Mr. Lowe presents an affidavit and the Court orders Mrs. Petrovich to sign it, she will sign it.
THE COURT:
Well, that is the Court’s position at this time. If we could do it today, that is fine. We will do it today. The Court will order the execution of the affidavits.
During the noon recess, Mr. Petrovich’s counsel dictated the affidavits to the Judge’s secretary, who then typed them. Mrs. Petrovich signed the affidavit in open court after her counsel stated on the record:
If the Judge orders Mrs. Petrovich to sign that affidavit, I will instruct her to sign it.
And the Judge responded:
I think the Court has done that this morning already.
The Clerk of Court notarized the affidavits.
The separation judgment, rendered on June 30, 1987, states:
When, after considering the pleadings, including the Amended Petition for Separation on the basis of their irreconcilable differences, and upon the consent of the parties hereto concerning the procedure to be employed concerning the rendition of the irreconcilable differences separation, for the reasons orally assigned,
IT IS ORDERED, ADJUDGED AND DECREED that there be a judgment of separation herein between Luke A. Pe-trovich and Romney K. Petrovich on the basis that there exist irreconcilable differences between them to such a degree and extent to render their continued living together insupportable and impossible, all in accordance with the provision of the Louisiana Civil Code Article 138[10].
The affidavit is required and its content prescribed by C.C. art. 138(10):
Separation from bed and board may be claimed reciprocally for the following causes:
# * # * * *
(10) When the spouses have lived six months separate and apart, voluntarily *416 and without reconciliation; provided that both spouses shall execute an affidavit attesting to and testifying that they have so lived separate and apart and that there exists irreconcilable differences between the spouses to such a degree and nature as to render their living together insupportable and impossible. In all such cases, the proceedings shall be entitled “In the matter of_ (petitioner) and his (or her) spouse_”.
The question now before us is whether the Trial Court’s ordering Mrs. Petrovich to execute the affidavit, pursuant to the parties’ stipulation, violates the spirit of Article 138(10) as a means of procuring a voluntary legal separation. Mr. Petrovich argues that it does not, because Article 3071 provides that a party may judicially enforce the performance of an agreement recited in open court. He further argues, citing Collins v. Collins, 485 So.2d 956 (La.App. 5th Cir.), writ denied, 488 So.2d 203 (La.1986), that Mrs. Petrovich’s affidavit was not necessary because she testified in open court.
We hold that the judgment of separation is invalid and must be vacated because it is based upon an affidavit which was not voluntarily executed. While in some instances Article 3071 may permit a court to order the execution of documents pursuant to an agreement recited in open court, in this instance the Court erred in ordering Mrs. Petrovich to sign the affidavit. The affidavit contemplated by Article 138(10) calls for an opinion as to whether there are irreconcilable differences between a husband and wife. By its very nature, an opinion may change — what may have been true a year ago may not have been true at the time the Trial Judge ordered the affidavit signed. Since no one should be compelled to sign a false affidavit, we hold a judge cannot compel it, even if he believes there are irreconcilable differences. Accordingly, the nature of an action for separation dictates that it must be an exception to Article 3071.
We are supported in this conclusion by the terms of Article 138(10) and the legislative purpose for its enactment. Article 138(10), we believe, plainly contemplates a situation where both parties unqualifiedly agree to the separation, and accept without question a judgment of separation. The intent of Article 138(10) is made plain by the requirement that the pleadings shall be entitled in such a way as to indicate the proceedings are not adversarial.
We also reject Mr. Petrovich’s argument concerning the enforceability of the stipulation against Mrs. Petrovich for the additional reason that by his actions he has violated the terms of the stipulation, indicating that he did not believe that he was bound by it. For example, on November 6, 1986, Mr. Petrovich filed a petition for divorce on the grounds of adultery while the stipulation obviously contemplated that on November 14, 1986 Mr. Petrovich would obtain a divorce on the grounds of having lived separate and apart for more than one year, since November of 1985. A fair reading of the stipulation also shows that it was agreed that the joint custody arrangement was to be continued, but in his petition for divorce Mr. Petrovich asked for sole custody. And finally, despite the stipulation’s provision for support to be paid in regular monthly increments, Mr. Petrovich paid varying amounts on an irregular basis. Therefore, having himself violated several provisions of the stipulation, we do not believe Mr. Petrovich can demand that his wife fulfill that portion of the stipulation regarding the separation.
Furthermore, although Collins may be sound, we do not read it so broadly as to apply in the case before us. In Collins, the parties testified in open court expressly that they had lived separate and apart for six months and that “irreconcilable differences between them rendered their continuing to live together insupportable.” The Fifth Circuit found that a separation judgment based on that testimony was valid under Article 138(10), despite the lack of affidavits, because, the sworn testimony given in open Court was superior to affidavits, and the testimony contained the required substance of the affidavits.
In this case, Mrs. Petrovich’s testimony is not a substitute for her affidavit. She did not testify that she and her husband *417 had irreconcilable differences and that they had lived separate and apart for more than six months without reconciliation. Hence, without the compelled affidavit, there is nothing to support Mrs. Petrovich’s entering into a voluntary separation on the grounds set forth in Article 138(10).
We also find the separation judgment defective because the Trial Court did not comply with the procedural requirements for an Article 138(10) separation as set forth in Article 3946 of the Code of Civil Procedure. In addition to the filing of the affidavits of the two parties, Section B of Article 3946 states:
An evidentiary hearing shall be required, but the testimony of either spouse establishing prima facie proof of the ground shall be sufficient to support a judgment of separation from bed and board.
Although both Mr. and Mrs. Petrovich testified at the hearing during which the affidavits were executed, neither testified specifically as to the grounds for the separation; hence, prima facie proof of the grounds was not established.
In her next assignment of error, Mrs. Petrovich contends that the Trial Judge erred in “not hearing completely and awarding arrearages” in alimony and child support. We fail to understand Mrs. Petro-vich’s claim that the issue was not completely heard by the Trial Court. The matter is contained in sixty pages of transcribed testimony and argument, following which the Court dismissed Mrs. Petrovich’s contempt rules. The Judge ordered the arrearages in the children’s school tuition paid from the funds Mr. Petrovich had deposited in the registry of the court and any excess used to pay the mortgage on Mrs. Petrovich’s residence. Counsel for Mrs. Petrovich then said:
That’s Your Honor’s judgment without giving me the courtesy of having completed my case, or of resting. That is fine. I take my seat. Another writ and another appeal, just like I predicted,
and then,
I have evidence to offer which I have been precluded from offering.
Counsel did not however explain what evidence he had to offer, nor did he make a proffer. Accordingly, we have reviewed the claim that arrearages should have been awarded based upon the evidence presented at the hearing. That evidence consists of testimony by Mr. Petrovich under direct and cross examination, and cancelled checks and bank deposit slips offered to corroborate his testimony.
In the course of Mr. Petrovich’s testimony, Mrs. Petrovich’s counsel conceded that Mr. Petrovich had paid $42,510.32 since the original support judgment rendered on February 27,1986. Additionally, Mr. Petrovich claimed to have made two other payments totalling $3,000.00, evidence of which was taken on a proffer by counsel for Mr. Pe-trovich, as well as a tuition payment of $500.00 directly to the children’s school. The amounts do not include the $11,136.52 which Mr. Petrovich had deposited into the registry of the Trial Court, and which the Trial Judge ordered paid to the children’s school and to the mortgagee of Mrs. Petro-vich’s residence.
We agree with Mrs. Petrovich’s contention that child support and alimony must be paid directly to the payee spouse, but we must reject her argument that Mr. Petrovich improperly deposited funds with the court rather than paying her. Under the circumstances of this case, Mr. Petro-vich has convinced us that he acted in the children’s best interest. Although not provided for in any of the support judgments, Mr. and Mrs. Petrovich had agreed that Mrs. Petrovich would pay the children’s private school tuition out of the child support paid to her by Mr. Petrovich. Mrs. Petrovich testified that because the amount of support was inadequate and the payments were made irregularly, she had been unable to pay the tuition. Mr. Petrovich testified, corroborated by a letter from the children’s school, that there were substantial arrearages in the payment of tuition. Mr. Petrovich further stated that there was a great likelihood that if the past-due tuition were not paid, the children would be excluded from the school. Rather than risk this trauma to the children, Mr. Petro- *418 vich, on the advice of counsel, paid the money for the tuition into the Court rather than paying it to his wife, who he believed would spend the money on something other than the tuition.
We calculate that $46,532.00 is the total amount of child support and alimony owed by Mr. Petrovich as of the June 26, 1987 hearing, pursuant to the February 27, 1986 judgment, as modified by the May 5, 1986 judgment, and as further modified by the judgment signed at the June 26, 1987 hearing pursuant to the stipulation.
Adding the total amount of support which Mrs. Petrovich concedes was paid, $42,510.32, with the $11,136.52 paid into Court, we find a total of $53,646.84, even without the disputed $3,500.00. Therefore, in terms of total support owed, it appears that Mr. Petrovich has actually overpaid. Hence, we cannot say that the Trial Court abused its great discretion in refusing to find Mr. Petrovich in contempt, and we affirm that ruling.
We turn now to the issue raised by Mrs. Petrovich’s third assignment of error, the custody of the two children of the marriage. The Trial Court heard extensive testimony on this issue from both Mr. and Mrs. Petrovich and from several of their friends and business associates. Immediately following the testimony, the Court granted the permanent care, custody and control of the children solely to Luke Petro-vich. The ruling was made immediately effective with the provision that for the rest of the summer, Mr. Petrovich would have the children during the week and Mrs. Petrovich would have them on the weekends.
In his reasons for terminating the parties’ joint custody and granting sole custody to the father, the Trial Judge concluded that Mr. Petrovich can provide a more stable environment for the children. He explained that he believed that since the rendition of the joint custody order, there had been a change in circumstances. He particularly noted Mrs. Petrovich’s relationship with a gentleman friend and her apparent lack of interest in her daughters as shown by her failure to spend time with them and her lack of efforts toward resolving their problems.
Mrs. Petrovich contends on appeal that the evidence does not rebut the presumption of C.C. art. 146 that joint custody is the preferred custody arrangement. Her arguments focus upon Mr. Petrovich’s lack of mental and emotional capacity to care for the children and upon her own moral fitness. She also contests the factual findings as to her lack of interest in the children.
When Luke Petrovich filed his request for sole custody, he undertook the burden of convincing the Trial Judge that joint custody would not be in the best interest of the children. C.C. art. 146(A)(2). In making the custody determination, the Trial Judge was to consider evidence with respect to each of the eleven factors set forth in Article 146(C)(2), and in his reasons for judgment the Trial Judge stated that he had indeed considered such evidence in reaching his decision to grant sole custody. Our review of that decision is limited to a determination of whether the Trial Court abused its wide discretion in carrying out its role as protector of the children’s best interest.
After carefully reviewing the record, we cannot say that the Trial Court abused its discretion. The record reflects both Mr. Petrovich’s great concerns for his children’s best interests and his willingness and ability to provide a stable home environment for them. We reject Mrs. Petro-vich’s contention that joint custody was terminated primarily on the basis of the moral fitness factor. As stated in the many cases cited by Mrs. Petrovich, moral fitness is only one factor in the determination of the children’s best interest, and we do not believe that factor received undue emphasis in this case. Accordingly, finding no abuse of the Trial Court’s discretion, we affirm its judgment granting sole custody of the children to Luke Petrovich.
Finally, Mrs. Petrovich assigns as error the Trial Judge’s denial of her request for a psychological evaluation of her husband. Such an evaluation may be ordered on the motion of either party pursuant to C.C. art. *419 146(H), but the matter is within the discretion of the Trial Judge. There has been no abuse of that discretion in this case.
For the foregoing reasons, we vacate the judgment of separation and in all other respects we affirm the judgments of the Trial Court. All costs of appeal to be paid jointly by Romney Kriedt Petrovich and Luke Petrovich.
AFFIRMED IN PART:
VACATED IN PART
GULOTTA, C.J., concurs with reasons.