556 So.2d 281 (1990)
Luke A. PETROVICH
v.
Romney Kriedt PETROVICH.
No. 89-CA-0807.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1990.
Rehearings Denied February 21, 1990.
Writs Denied April 20, 1990.
Terence L. Hauver, Robert C. Lowe, Lowe, Stein, Hoffman & Allweiss, New Orleans, for Luke A. Petrovich.
Floyd J. Reed, Reed & Reed, New Orleans, for Romney Kriedt Petrovich.
Before KLEES, WARD and BECKER, JJ.
WARD, Judge.
Romney Kriedt Petrovich appeals judgments of the District Court dated January 20, 1989 and February 15, 1989 dismissing her rule to compel disqualification of her former husband's counsel and maintaining an exception of res judicata, which barred her petition for partition of community property.
This complex and protracted marital dispute between Mr. and Mrs. Petrovich has been ongoing since 1985 and has previously appeared in this Court on several occasions. The factual and procedural history of this case prior to this appeal is recounted in a previous opinion. See Petrovich v. Petrovich, 513 So.2d 411 (La.App. 4 Cir.1987).
In one portion of her appeal, Mrs. Petrovich seeks a reversal of the lower court's refusal to disqualify Mr. Petrovich's counsel, Robert C. Lowe and the firm of Lowe, Stein, Hoffman and Allweiss. She alleges a conflict of interest has arisen as a result of the association of Ellen W. Kessler with the Lowe firm so as to require its *282 removal from the case. Mrs. Petrovich claims her confidentiality rights are violated by the firm's continued representation of her former spouse.
The factual foundation of Mrs. Petrovich's disqualification argument is that in June 1987 she contacted Ellen W. Kessler, then a partner in the firm of Lambert and Kessler for a second opinion on the entirety of her marital dispute. Approximately eight months later, Ms. Kessler became associated with the Lowe firm.
Mrs. Petrovich maintains that during the course of this consultation with Ms. Kessler she divulged certain confidences material to the ongoing domestic litigation. Ms. Kessler vehemently denies this assertion and claims that the only matter she and Mrs. Petrovich discussed was whether an appeal of an unfavorable custody ruling would likely be successful. Both Ms. Kessler and Mr. Lowe steadfastly maintain there has never been any discussion of this litigation between Ms. Kessler and anyone in the Lowe firm.
Following an adverse judgment on her rule to disqualify, Mrs. Petrovich applied to this Court for supervisory writs, No. 89-C-0258; decided March 22, 1989. Ruling on the merits of her application, this Court denied the writ:
The trial judge did not commit manifest error in finding that defense counsel had established a `cone of silence' between himself and Ms. Kessler, concerning the law firm's activities in this matter thus avoiding any actual, or appearance of, impropriety. See Lemaire v. Texaco, Inc., 496 F.Supp. 1308 (E.D.Tex.1980) and Panduit Corp. v. Allstate Plastic Mfg. Corp., 744 F.2d 1564 (D.C.Cir.1984).
The Louisiana Supreme Court denied writs on this Court's writ disposition.
Mrs. Petrovich's writ application and appellate brief present the same issues. The issue and authorities cited in both documents are identical.
Because Mrs. Petrovich's arguments have already been considered and denied by this Court, the writ disposition made by this Court acts as the "law of the case" and precludes any further consideration of this issue. Petition of Sewer and Water Board of New Orleans, 278 So.2d 81 (La. 1973); Brumfield v. Dyson, 418 So.2d 21 (La.App. 1 Cir. 1982), writs denied 422 So.2d 162 (La.1982). This portion of Mrs. Petrovich's appeal is meritless.
The remaining portion of Mrs. Petrovich's appeal complains of error in the Trial Court's ruling maintaining Mr. Petrovich's exception of res judicata barring her petition for partition of community property.
Mr. Petrovich initiated legal proceedings by suing for a legal separation based upon abandonment but amended the petition to allege cruel treatment. Mrs. Petrovich reconvened asking for a separation on grounds of cruelty. At some later time Mr. and Mrs. Petrovich entered into a series of agreements to resolve their disputes. Among other things, the parties agreed they would first obtain a separation based on irreconcilable differences, as authorized by C.C. art. 138(10), and then Mr. Petrovich would obtain a divorce. Mr. Petrovich agreed to pay temporary alimony. Mrs. Petrovich agreed to waive her right to permanent alimony. Additionally, the parties agreed to a partition of the community assets. These agreements were made part of a stipulation in Court, and dictated into the Court record on June 19, 1986. Five months later, on December 2, 1986, Mrs. Petrovich sought to set aside the community property settlement alleging fraud. Thereafter, she refused to execute an affidavit that there existed irreconcilable differences in her marriage. Subsequently, when Mrs. Petrovich appeared in Court, more than one year after the stipulations, she again refused to execute the affidavits required for a separation based on irreconcilable differences.
Nonetheless, the Trial Court sought to enforce the stipulations and ordered her to sign the affidavit in his presence. Mrs. Petrovich signed the affidavit under protest, and then only to avoid being held in contempt of court. The Trial Court then made the affidavit part of the record and rendered a judgment of separation as well as a judgment partitioning the community, *283 based on the June 19, 1986 stipulation. The Trial Court awarded custody of the two minor children to Mr. Petrovich.
Mrs. Petrovich appealed both the award of custody and the judgment of separation. This Court affirmed the award of custody but reversed the judgment of separation, holding that art. 138(10) contemplates a separation by unequivocable assent and a shared agreement that irreconcilable differences exist when the affidavits are executed and submitted to the Trial Court. Petrovich v. Petrovich, supra.
Thereafter, Mrs. Petrovich filed a petition to partition the community property. Mr. Petrovich filed an exception of res judicata which the Trial Court maintained.
In this appeal, Mrs. Petrovich argues that when the Judgment of Separation was reversed the judgment partitioning the community property was rendered invalid. Mr. Petrovich, on the other hand, argues that he and Mrs. Petrovich voluntarily partitioned their community property regime by entering into the stipulation. La.C.C. art. 2336. Additionally, he maintains that the stipulation was a compromise between the parties to prevent additional litigation. La.C.C. art. 3071.
For the following reasons we reverse the ruling on the exception of res judicata.
The proceedings to terminate the community regime incident to obtaining a separation from bed and board are dependent upon the validity of the judgment of separation from bed and board. La.C.C. art. 159, La.R.S. 9:2801 and 9:2802.
La. 9:2802. Rendition of judgment of partition; prerequisite
* * * * * *
No judgment of partition shall be rendered unless rendered in conjunction with, or subsequent to, the judgment which has the effect of terminating the matrimonial regime.
When the judgment of separation from bed and board was reversed, the judgment partitioning the community property was aborted.
Nevertheless, a community property regime may now be terminated even while the marriage continues.
La.C.C. Article 2329:
Exclusion or modification of matrimonial regime
Spouses may enter into a matrimonial agreement before or during marriage as to all matters that are not prohibited by public policy.
Spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime during marriage only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. They may, however, subject themselves to the legal regime by a matrimonial agreement at any time without court approval.
During the first year after moving into and acquiring a domicile in this state, spouses may enter into a matrimonial agreement without court approval.
In this case there was neither a joint petition nor a finding by the Trial Court that the partition served the best interest of the parties. The stipulation of the parties partitioning the community, although made in court and dictated in the record, was insufficient. Further, Article 2329 contemplates that the parties intend to remain together as husband and wife. Hence, Article 2329 cannot serve as a basis for the judgment of partition in this case.
There remains the question of whether the agreement and subsequent stipulation is a partition of the community by virtue of La.C.C. art. 2336.
La.C.C. art. 2336 provides:
Ownership of community property
Each spouse owns a present undivided one-half interest in the community property. Nevertheless, neither the community nor things of the community may be judicially partitioned prior to the termination of the regime.
During the existence of the community property regime, the spouses may, without court approval, voluntarily partition the community property in whole or part.

*284 In such a case, the things that each spouse acquires are separate property. The partition is effective toward third persons when filed for registry in the manner provided by Article 2332.
Article 2336 assumes not only the continuation of the marriage but also the continuation of the community property regime. See Ducote v. Ducote, 442 So.2d 1299 (La. App. 3rd Cir.1984). In the present case when the parties entered into the stipulation each spouse intended to obtain a divorce and to terminate, not continue, the community property regime. Further nothing contained in Article 2336 even remotely suggests it can support a judgment of partition without a prior judgment terminating the regime. Without a judgment, there cannot be a thing adjudged. We conclude neither of the foregoing articles can serve as a basis of partition under the facts of this case.
An agreement which is a compromise is not sufficient to partition the assets and terminate the community property regime. Although Act No. 709 of 1979, Amending La.C.C. Art. 2329, removed incapacities created by marital status and spouses can now enter into contracts with each other, La. C.C. Art. 2329, provides the exclusive mode of partition and termination of the community property regime during marriage. A compromise agreement without a petition to partition and a finding by the Court that the termination is in the best interest of the parties cannot be the basis of partition. It follows, therefore, that without a valid judgment there can be no res judicata claim.
La.R.S. 9:2801 and 9:2802 provide for partition proceedings after termination of the regime or incident to an action that would lead to termination of the regime. In either case a judgment of court pursuant to La.C.C. art. 2329 or La.R.S. 9:2802 may follow.
This matter is remanded to the trial court for a hearing on Mrs. Petrovich's Petition for Partition of the Community. Each party is to bear their own costs of the appeal.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.