GONZALES, Judge.
This is an appeal from a judgment holding the Louisiana Patient’s Compensation Fund (PCF) liable for reimbursement of medical expenses paid by a self-insured employer to an employee who was a victim of medical malpractice.
FACTS AND PROCEDURAL HISTORY
On July 12, 1988, Donna Wallace, an employee of A. Copeland Enterprises, Inc., and a beneficiary of its self-insured health plan, underwent a mastectomy at Slidell Memorial Hospital. Immediately following the sur *1088 gery, Ms. Wallace awakened with complaints of pain and was given a narcotic analgesic by the nurse anesthetist, Julie Joyce, CRNA. Ms. Wallace lapsed into a coma shortly thereafter in the recovery room, where she had not been adequately monitored by the hospital recovery staff. She remained in a coma until her death two years later on August 22, 1990.
On February 16, 1989, Ms. Wallace and her husband, individually and on behalf of their three minor children, filed suit seeking damages against Slidell Memorial Hospital, Dr. Luis Hernandez, the anesthesiologist, and Julie Joyce, among others, for medical malpractice. The matter was submitted to a medical malpractice review panel pursuant to La.R.S. 40:1299.47.[1] A. Copeland Enterprises, Inc. and its Employee Welfare Benefit Plan (collectively, Copeland) intervened in the review panel proceedings, seeking reimbursement of medical expenses paid on behalf of Ms. Wallace. On March 6, 1990, the review panel issued opinions and written reasons, finding that the Slidell Memorial Hospital failed to comply with the appropriate standard of care in that “the hospital recovery room staff failed to properly monitor [Ms. Wallace] and respond in a timely fashion to a deterioration in [her] vital signs” which “rapidly led to [Ms. Wallace’s] demise: respiratory and cardiac arrest.” However, the panel also found that the evidence did not support the conclusion that Dr. Hernandez and Ms. Joyce failed to |smeet the applicable standard of care.
Thereafter, the Wallaces settled their claims with the defendants and received payment from the PCF; however, in the receipt and release agreement, it is expressly stated that the Wallaces accepted the settlement funds as payment for general damages only, and not as compensation for medical expenses incurred.
Following settlement of the Wallace’s claims, Copeland went forward with the review panel proceedings. At the conclusion of those proceedings, Copeland filed suit against Slidell Memorial Hospital, the Louisiana Hospital Association Trust Fund (the hospital’s insurer), Dr. Hernandez, Ms. Joyce, and the PCF. The Louisiana Hospital Association Trust Fund and Dr. Hernandez were later released from the litigation. On the day of the trial, the parties agreed to stipulate to all relevant facts. Thereafter, a document was filed into the record, wherein the parties stipulated (1) to the liability of Slidell Memorial Hospital and Julie Joyce; (2) to the payment of $731,602.57 by Travelers Insurance Company and Provident Insurance Company from money funded by Copeland for medical expenses resulting from the July 12, 1988 incident; (3) that coverage for medical expenses was provided to Ms. Wallace under Copeland’s employee benefit program; (4) that Mr. Wallace executed a subro-gation agreement in favor of Copeland with regard to the medical payments; (5) that Slidell Memorial Hospital and Julie Joyce were qualified health care providers at the time of the incident and were properly enrolled in the PCF; and (6) to the authenticity of certain depositions and documents.
The parties then filed memoranda with the trial court addressing the sole remaining issue: whether Copeland, as subrogee of Ms. Wallace, was entitled to recover expenses for “future medical care and related benefits” as defined by La.R.S. 40:1299.43(B)(1)[2] 14from the PCF and/or the other defendants. On December 29, 1992, the trial court rendered judgment in favor of Copeland and against the PCF, as well as Slidell Memorial Hospital and Ms. Joyce, as nominal defendants only, in the amount of $731,602.57, plus costs and legal interest from the date of Ms. Wallace’s death.
*1089 The defendants’ subsequent motion for a new trial was denied and this suspensive appeal followed. On appeal, the PCF[3] makes the following assignment of error:
The trial court erred in interpreting Louisiana law to entitle A. Copeland Enterprises, Inc. and A. Copeland Enterprises, Inc. Employee Welfare Benefits Plan to the reimbursement from the Louisiana Patient’s Compensation Fund of monies paid on behalf of an employee/insured for medical expenses incurred as a result of the medical malpractice of a health care provider qualified under the Louisiana Medical Malpractice Act.
Copeland answered the appeal claiming that the trial court erred as a matter of law in awarding judgment against Slidell Memorial Hospital and Ms. Joyce as nominal parties only.
LOUISIANA MEDICAL MALPRACTICE ACT
The Louisiana Medical Malpractice Act, La.R.S. 40:1299.41 et seq., is a statutorily created scheme which provides for the compensation of medical malpractice victims who have been injured by qualified health care providers. Stuka v. Fleming, 561 So.2d 1871, 1873 (La.1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990). As described in Lamark v. NME Hospitals, Inc., 522 So.2d 634, 635 (La.App. 4th Cir.), writ denied, 526 So.2d 803 (La.1988), the three primary features of the scheme are:
(1) the mandatory submission of all claims to a medical review panel prior to any suit being filed, which requirement may be waived only by consent of all parties (§ 1299.47); (2) a limitation of $500,000.00 plus interest and costs on the total amount of damages recoverable per injured person and a limit of $100,000.00 on the total liability of any one health care provider for all malpractice claims stemming from the injury or death of one person (§ 1299.42); and (3) the creation of the Patient’s Compensation Fund ..., financed by surcharges levied on the health care providers, from which are Rpaid general damages that exceed the $100,000 limitation of liability provided to each health care provider, as well as “future medical care and related benefits,” which the statute specifies are to be paid without regard to the $500,000 limit on other damages. (§§ 1299.43, 1299:44).
At issue in this case is the proper interpretation of § 1299.43(C) of the Act which allows a patient, who has settled his medical malpractice claim, to thereafter make a claim to the PCF for future medical care and related benefits made necessary by the health care provider’s malpractice. Section 1299.43(C) provides:
Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits or a settlement is reached between a patient and the patient’s compensation fund in which the provision of medical care and related benefits is agreed upon and continuing as long as medical or surgical attention is reasonably necessary, the patient may make a claim to the patient’s compensation fund through the board for all future medical care and related benefíts directly or indirectly made necessary by the health care provider’s malpractice unless the patient refuses to allow them to be furnished, (emphasis added)
The PCF claims that, since § 1299.43(C) only allows “the patient” to make a claim for future medical care and related benefits, Copeland is precluded from recovering the expenses it paid on behalf of Ms. Wallace through subrogation since Copeland is not “the patient.” On the other hand, Copeland claims that it has stepped into the shoes of Ms. Wallace and is entitled to recover the expenses through subrogation.
In his written reasons for judgment, the trial court found that a right of subrogation existed in favor of Copeland allowing it to assert the medical expense claim of Ms. Wallace and her family. The trial court further found that Copeland was entitled to enforce this right of subrogation against the defendants based on other reported cases wherein the term “the patient,” as used in certain *1090 sections of the Act, was not limited to the person who actually sustained injury as a result of malpractice.
The PCF’s argument that the use of the term “patient” in § 1299.43(C) precludes Copeland from enforcing its right of subrogation is unconvincing. Legislative intent is the fundamental question in all cases of statutory interpretation. State v. Piazza, 596 So.2d 817, 819 (La.1992). A primary purpose of the legislature in enacting § 1299.431 swas to insure victims of malpractice that all reasonable future medical care and related benefits made necessary by the malpractice would be provided by the PCF. Allowing the PCF to invoke a technical distinction in terminology within the Act to avoid its responsibility for medical expenses hinders, rather than promotes, this purpose. We do not dispute, as the PCF points out, that the legislature is presumed to have been aware of the use of the term “person” in § 1299.-41(E)(1) and the use of the term “patient” in § 1299.43(C). However, when it used the term “patient” in § 1299.43(C), the legislature must also be conclusively presumed to have had full knowledge of the long existing principles of subrogation which are traditional in civil law doctrine.
On the other hand, the allowance of subro-gation in this case is consistent with the purpose of § 1299.43. The PCF will bear the ultimate burden of Ms. Wallace’s future medical care and benefits; however, subrogation results in no greater liability to the PCF than would have occurred had Ms. Wallace asserted the claim herself.[4] Because subro-gation is merely a means of transferring an obligation by which one person is substituted to the rights of another, Copeland, as subro-gee, acquires only those rights possessed by Ms. Wallace, as subrogor. La.C.C. art. 1825; Theriot v. Bergeron, 552 So.2d 1, 4 (La.App. 1st Cir.1989).
Another advantage to allowing subrogation is promptness and certainty of recovery to the patient. The patient, who cannot make a claim with the PCF for future medical care and benefits until after a judgment is entered or settlement is reached, can rely on payment from his insurer, who will be more likely to tender prompt payment to its insured, if it knows that it will later be able to recover from the PCF. See Aetna Insurance Company v. Naquin, 488 So.2d 950, 954 (La.1986).
Because we find that the trial court was correct in allowing Copeland to exercise its right of subrogation against the PCF, we need not address Copeland’s claim that the Ivtrial court erred in awarding judgment against Slidell Memorial Hospital and Julie Joyce as nominal parties only.
For the above reasons, we affirm the judgment of the trial court in favor of A. Copeland Enterprises, Inc. and the A. Copeland Enterprises Employee Welfare Benefit Plan against the Louisiana Patient Compensation Fund, as well as Slidell Memorial Hospital and Julie Joyce, CRNA, as nominal defendants only, in the full amount of $731,602.57, plus legal interest from the date previously stipulated, August 22, 1990, plus all costs of the proceedings. Costs of this appeal are also assessed against the Louisiana Patient Compensation Fund.
AFFIRMED.

. Louisiana Revised Statute 40:1299.47(A)(1) generally provides that all malpractice claims against health care providers covered by the Act shall be reviewed by a medical review panel.

. Louisiana Revised Statute 40:1299.43(B) defines "future medical care and related benefits” as "all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of the injury." All damages sought by plaintiffs herein consist of "future medical care and related benefits.”

. Although the appeal of this case was granted on behalf of the PCF, the PCF Oversight Board, as well as Slidell Memorial Hospital and Julie Joyce, as nominal defendants, the PCF is the only defendant which filed an appeal brief.

. As explained by Professor Saul Litvinoff, through subrogation, "the obligor suffers no damage from the substitution of the new obligee, since he is not placed in a worse position than he was when he initially obligated himself." Litvinoff, S., Subrogation, 50 La.L.Rev. 1145, 1153 (1990).