597 So.2d 479 (1992)
Brenda Wideman WALTON
v.
Darrell Arden WALTON.
No. CA 90 2300.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
*480 James J. Zito, Baton Rouge, for plaintiff-appellee Brenda Wideman Walton.
Chester Hugh Boyd, Baton Rouge, for defendant-appellant Darrell Arden Walton.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
WHIPPLE, Judge.
This case comes before us on appeal by defendant from a judgment rendered in the Family Court of East Baton Rouge containing provisions involving transfer of the family home and waiver of permanent alimony.[1]
For the following reasons, we affirm the judgment of the trial court and remand to the Family Court of East Baton Rouge for further proceedings consistent with this opinion.
Mr. and Mrs. Walton were married on November 25, 1974, in Baton Rouge, Louisiana, where they established their matrimonial domicile. Two children were born of the marriage. On December 20, 1988, Mrs. Walton filed suit for separation in the Family Court for the Parish of East Baton Rouge. Her suit requested alimony and child support, and use of the family home. She also included a demand for protective *481 orders for the preservation of the community, and prohibiting defendant from returning to the family home or communicating with plaintiff. Mrs. Walton also reserved her right to partition the community of acquets and gains.
Mr. Walton answered the petition and filed a reconventional demand.
On January 17, 1989, the parties appeared in court. In accordance with stipulations entered into by the parties, the court rendered a judgment granting protective orders, and ordering custody, visitation and alimony pendente lite.
On January 31, 1990, Mrs. Walton amended her original petition and requested a divorce on the grounds of living separate and apart for more than one year. The matter was set for trial on February 15, 1990. At trial, the following stipulations were read into the record: a divorce would be granted on the grounds of living separate and apart for more than one year; both parties waived all rights to permanent alimony; the parties would have joint custody of the children and Mr. Walton would pay $225.00 per month per child as child support with each spouse claiming one child as a dependent on their income taxes; Mrs. Walton was to pay Mr. Walton the sum of $10,000.00 within forty-five days to purchase and procure her interest in the family home. The parties stipulated that payment of this sum was to act as a conveyance of Mr. Walton's interest in the family home to Mrs. Walton. The parties agreed this was to constitute settlement in full of the community property with the sole exception of certain community movables.
Both parties were questioned in the proceedings in open court to assure they understood the agreements reached in court that day. Mrs. Walton affirmed her understanding that she was giving up all rights to permanent alimony. Mr. Walton, when questioned regarding his understanding and agreement with the stipulations, only expressed reservation with the idea of getting a divorce, stating that he did not believe in divorce.
Mr. Walton subsequently refused to sign the stipulated judgment of divorce and refused to execute the documents necessary to complete the transfer of the family home to Mrs. Walton.
Mrs. Walton filed a rule for contempt and for attorney's fees for defendant's failure to sign the stipulated judgment. On May 1, 1990, at the conclusion of the contempt hearing, the judge signed a written judgment in accordance with the stipulations entered on February 15, 1990.
Mr. Walton then filed a motion for a new trial, which was denied by the trial court. Mr. Walton now appeals the judgment rendered in accordance with the stipulations.
Appellant presents two issues on appeal. The first issue is whether the trial court had subject matter jurisdiction to render judgment in accordance with the stipulations. The second issue is whether the agreement between the parties was tainted by error or lesion beyond moiety.
For the following reasons we affirm the judgment of the trial court and remand to the Family Court of East Baton Rouge for further proceedings to enforce the judgment consistent with this opinion.

JURISDICTION OF THE FAMILY COURT
Appellant contends that the Family Court for the Parish of East Baton Rouge had no authority to sign the judgment enforcing the stipulations entered of record, relative to the transfer of the family home. He contends that jurisdiction to partition or liquidate the community of acquets and gains lies exclusively with the 19th Judicial District Court for the Parish of East Baton Rouge.[2] We disagree.
At all times pertinent to this discussion, the subject matter of the Family Court was defined in LSA-R.S. 13:1401(7) which provided as follows:

*482 There is hereby established the family court for the parish of East Baton Rouge, which shall be a court of record with exclusive jurisdiction in the following proceedings ...
(7) All actions for divorce, separation from bed and board, annulment of marriages, establishment or disavowal of the paternity of children, alimony and support, custody and visitation of children, as well as of all matters incidental to any of the foregoing proceedings ..... jurisdiction of which was vested in the Nineteenth Judicial District Court for the parish of East Baton Rouge prior to the establishment of the family court for the parish of East Baton Rouge. The Nineteenth Judicial District Court for the parish of East Baton Rouge however, shall retain jurisdiction of all proceedings involving liquidation and partition of the community after a judgment of divorce or separation from bed and board. (Emphasis added).
Appellant contends that the Family Court lacks jurisdiction to render judgments which affect partition of the community and property rights related thereto. Appellant contends that LSA-R.S. 9:2801 provides the exclusive manner in which community property is partitioned. LSA-R.S. 9:2801 provides in pertinent part:
When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising from the matrimonial regime, either spouse, upon termination of the matrimonial regime, or as an incident of the action which would result in a termination of the matrimonial regime, may institute a proceeding, which shall be conducted in accordance with the following rules ... (Emphasis added).
We find appellant's first argument to be without merit, as follows.
The issue presented involves a question of statutory interpretation.
When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used.....Where it is possible to do so, it is the duty of the courts in the interpretation of the laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the lawmaker....
Davis v. Davis, 583 So.2d 934, 936-937 (La.App. 1st Cir.1991), citing Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984).
A careful reading of R.S. 13:1401(7) indicates the possibility of overlapping grants of jurisdiction between the Family Court for the Parish of East Baton Rouge and the Nineteenth Judicial District Court. Under the plain wording of the statute, the Nineteenth Judicial District Court has exclusive jurisdiction over proceedings involving liquidation and partition of the community after a judgment of divorce or separation from bed and board. Also, under the plain wording of the statute, the Family Court has exclusive jurisdiction over certain matters, including alimony, as well as jurisdiction over matters that are incidental to alimony. We conclude that where a waiver of alimony is dependent upon a transfer of certain community property, the transfer of the community property is incidental to the alimony matter. Where this agreement occurs prior to a separation from bed and board or divorce, jurisdiction in the Family Court is proper.
This interpretation in accord with the spirit of the law and the intention of the lawmakers. As appellee points out in her brief to this court, a more narrow interpretation of the statute would severely limit and dilute the ability of the Family Court to resolve the right to waive alimony when good and valuable consideration has been given for the waiver of such right. Moreover, the spouse waiving alimony would be *483 at a disadvantage and less inclined to waive alimony, if that party had to state under oath in the Family Court that the right was being waived, with the requirement that upon conclusion of the separation or divorce hearing, the parties would enter into a written agreement or judgment in the Nineteenth Judicial District Court.
LSA-R.S. 9:2801 provides the manner in which the community of acquets and gains is partitioned. The plain wording of the statute dictates that before that provision becomes operative, the parties must be unable to agree. When, as in this case, the parties did agree and those agreements are by way of stipulations read into the record, that agreement became binding and the provisions of LSA-R.S. 9:2801 are inapplicable.

PARTIES BOUND BY THE AGREEMENT AS A TRANSACTION AND COMPROMISE
Appellant's argument that the Family Court lacked jurisdiction to partition the community must fail for another reason. The court did not partition the community. The parties entered into an agreement among themselves to partition the property. That agreement is binding upon the parties as a transaction and compromise.
LSA-C.C. art. 3071 provides:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
In Adams v. Adams, 529 So.2d 877 (La. App. 4th Cir.), writ denied 533 So.2d 363 (La.1988), our brethren held that a compromise confected in open court and reduced to a consent judgment was binding upon the spouses, and the wife's agreement to waive alimony precluded her from obtaining permanent alimony. The wife claimed the consent judgment was an agreement to agree and never perfected because the husband never signed the act of settlement of community transferring his interest in the community home to her. The court concluded that the wife's remedy was to bring a rule to compel the husband to sign the act of settlement.
In Tolbert v. Hyatt Management, 496 So.2d 1054 (La.App. 4th Cir.1986), a personal injury action, the parties reached a settlement which was made part of the record in testimony and notes of evidence. The victim subsequently refused to sign the release or accept the settlement check. The court held that the victim could be compelled to execute the written settlement in accordance with the agreement reached in open court.
We find that the parties entered into a valid transaction and compromise in accordance with LSA-C.C. art. 3071. Thus, the agreement confers upon each of them the right to the judicial enforcement of its performance. The record shows a lengthy discourse by the trial court commending the parties' actions in reaching an agreement. The transcript of the testimony and note of evidence convinces this court that the parties reached an agreement for personal reasons and in recognition of their joint interest in avoiding a lawsuit involving their children in their prolonged controversy.

ERROR AND LESION
Appellant asserts that the agreement was tainted by error and was lesionary. After a careful review of the record, we conclude that this argument is equally without merit.
Mr. Walton claims he did not understand the agreement and was confused concerning the stipulations. He contends that due to the emotions he felt that day, he was not capable of understanding the proceedings.
*484 Recital of the agreement in open court must make full disclosure of the terms so that the parties are fully apprised of their rights and obligations. Tolbert v. Hyatt Management, 496 So.2d 1054 (La. App. 4th Cir.1986); Troxclair v. Parish of St. Charles, 450 So.2d 759 (La.App. 5th Cir.1984). We find that the agreement was fully disclosed to Mr. Walton and that he was apprised of his rights and obligations, Mr. Walton testified in court concerning his understanding of the agreement. His testimony was straightforward, only expressing reservation relative to getting a divorce in general, based upon his stated belief that he did not believe in divorce.
Compromise agreements between parties to avoid litigation are favored by law, and courts will not declare a settlement void without a clear showing that it violates good morals or public interest. Compromise settlements are not invalidated lightly in absence of bad faith, error or fraud. Adams v. Adams, 529 So.2d 877 (La.App. 4th Cir.), writ denied, 533 So.2d 363 (La.1988). There is no evidence of bad faith or fraud on the part of any of the parties. Mr. Walton was in court and the agreement was explained to him. His argument that the agreement was tainted by error is without merit.
Finally, he claims the agreement was lesionary. We note that under LSA-C.C. art. 3078, transactions cannot be attacked on account of lesion. However, the Supreme Court has held:
Here is an evident exception to the rule with regard to the finality of compromises. A partition, even when it takes upon itself the aspect and qualities of a compromise, may be attacked for lesion beyond one-fourth.
Williamson v. Amilton, 13 La.Ann. 387, 388 (La.1858). See, Harmon v. Harmon, 508 So.2d 616 (La.App. 2d Cir.), writ denied, 513 So.2d 1210 (La.1987); McDaniel v. McDaniel, 441 So.2d 353 (La.App. 5th Cir.1983), writ denied, 445 So.2d 1230 (La. 1984). Nevertheless, we find appellant's argument that the transaction was lesionary to be without merit as there is no evidence of lesion beyond moiety appearing of record.
By brief, appellee seeks damages for frivolous appeal. Because the appellee has neither answered this appeal nor filed an independent appeal, we do not consider the request. LSA-C.C.P. art. 2133; Henderson v. Kentwood Spring Water, Inc., 583 So.2d 1227 (La.App. 1st Cir.1991).
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs. This matter is remanded to the Family Court of East Baton Rouge for further proceedings to enforce the judgment.
AFFIRMED AND REMANDED.
NOTES
[1] Although the judgment at issue herein was rendered on February 15, 1990, judgment was read and signed on May 1, 1990, after a hearing on plaintiff's rule for contempt for defendant's failure to sign the documents necessary to complete certain transactions encompassed by the judgment.
[2] In addition to making this argument in his appellant brief, appellant filed an exception of lack of subject matter jurisdiction with this court objecting to the jurisdiction of the Family Court in this matter.