647 So.2d 640 (1994)
Karen Ann LANGLEY, born DeRouen, Plaintiff-Appellee,
v.
Kenneth Paul LANGLEY, Defendant-Appellant.
No. 94-726.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
*641 William J. Cutrera, Lake Charles, for Karen Ann Langley born DeRouen.
Evelyn Margaret Oubre, Lake Charles, for Kenneth Paul Langley.
Before KNOLL and WOODARD, JJ., and BERTRAND,[*] J. Pro Tem.
WOODARD, Judge.
The issue on appeal involves the validity of an agreement entered into by Karen and Kenneth Langley prior to their divorce.

FACTS
On February 26, 1992, Karen Langley filed a Petition for Divorce with an attached document entitled "Joint Stipulations." The judgment for divorce was signed on April 8, 1993. The center of the dispute in the case sub judice is the "Joint Stipulations" dividing the property and debts between the parties. In this document, Karen agreed to sign over title to a boat and trailer, an air compressor, and a GMC truck. Karen's husband, Kenneth, agreed to "waive" his interest in the community house, pay the balances due on certain accounts, sign over the title to two automobiles and a travel trailer, and pay Karen $1,000 in permanent alimony. This document was signed seven days before Karen filed for divorce.
On April 8, 1993, Kenneth filed a Motion To Set Aside, or Alternatively Modify, the "Joint Stipulations." After the trial court denied the motion, Kenneth filed a motion for a new trial, which was denied by the trial court on March 21, 1994. He now appeals and asserts the following assignment of error: The trial court erred in denying him a new trial because the judgment was clearly contrary to the law in that it validated an agreement, entered into during marriage, which: (1) terminated the community property regime without judicial approval, in direct violation of LSA-C.C. art. 2329; and, (2) provided for permanent alimony.
The Honorable William L. McLeod, Jr. held that the document entitled "Joint Stipulations" was not a matrimonial agreement but, instead, a valid contract between the spouses, reasoning that the cause for entering into a matrimonial agreement is to either establish a regime of separate property, or to modify or terminate the community property regime, and that this was not the cause of the "Joint Stipulations."

LAW
In Louisiana, contracts between spouses are classified either as: (1) matrimonial agreements; or (2) interspousal contracts. Kenneth argues that their "Joint Stipulations" should be classified as a matrimonial agreement because it was intended to and did terminate the community. On the other hand, Karen argues that it was simply an interspousal contract containing provisions that are not contrary to public policy.

MATRIMONIAL AGREEMENTS
A matrimonial agreement is a contract which establishes a regime of separate property, or modifies or terminates the matrimonial regime. La.Civ.Code. art. 2328. A matrimonial regime is a system of principles and rules governing the ownership and management of the property of married persons as between themselves and third persons. La. Civ.Code art. 2325. The reference to a "system" contemplates a "methodic arrangement of rules" rather than an isolated or single transaction; thus, a matrimonial agreement affects the classification and management of future property. Katherine S. Spaht and W. *642 Lee Hargrave, Matrimonial Regimes § 8.6, at 380 and 381, in 16 Louisiana Civil Law Treatise (1989). During marriage, spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. La.Civ.Code art. 2329.

INTERSPOUSAL CONTRACTS
The 1980 matrimonial regimes revision repealed LSA-C.C. art. 1790, which generally prohibited interspousal contracts; therefore, spouses can now contract with each other to the same extent as persons who are not married. Katherine S. Spaht and W. Lee Hargrave, supra § 8.10, at 395 and 396. These contracts do not require judicial approval. Id. § 8.6, at 380. While a matrimonial agreement affects the classification and management of future assets, interspousal contracts affect only existing assets and debts, and spouses who are anticipating a divorce can enter into an interspousal contract that divides existing assets and debts without judicial approval. Id. § 8.6, at 381 and § 8.8, at 390, respectively.
It is obvious from the following circumstances that Karen and Kenneth intended only to separate and divide their existing property and debts in anticipation of a divorce, namely: (1) they physically separated; (2) two days later, they agreed, and formalized into writing, how they wished to divide their existing assets and debts; (3) they included a stipulation regarding permanent alimony, which is relevant only after, and pursuant to, a divorce; and, (4) Karen followed through by filing a petition for divorce seven days after signing the stipulations. The stipulations in the case sub judice divided only existing assets and debts as no future together was anticipated.
Kenneth argues that Ducote v. Ducote, 442 So.2d 1299 (La.App. 3 Cir.1983), and Poirier v. Poirier, 626 So.2d 868 (La.App. 3 Cir. 1993), writ denied, 634 So.2d 389 (La.1994), support his position that he and Karen intended to terminate the community when they signed the agreement, because they were living separately in anticipation of a divorce. It is apparent from the totality of their actions that they intended to terminate the community; however, signing the "Joint Stipulations" did not terminate the community, and his reliance on the two cases, supra, is misguided because the language in those agreements clearly terminated the community unlike that in the "Joint Stipulations." In Ducote, supra 442 So.2d at 1303, the agreement provided, in pertinent part: "[T]he community of assets and gains previously existing between them shall be completely and wholly dissolved, and so that the property to be owned hereafter by each of them shall be the separate property of each." (Emphasis added.) Moreover, the agreement in Poirier, supra 626 So.2d at 869, provided: "[T]hey desire to settle and liquidate the community property that formerly existed between them....;" and, "[T]he parties hereto discharge each other from any further accounting of the community property which formerly existed between them...." (Emphasis added.) There is no similar language in the case sub judice. In fact, there is absolutely no language that clearly and specifically terminates the community.
Additionally, there is another factor which clearly indicates that it was not the stipulations that ended the community. Seven days after they executed the "Joint Stipulations," Karen filed that document along with her petition for divorce, and that, alone, had the legal effect of terminating the community. See La.Civ.Code art. 2356, Comment C. Further, the agreement only divided existing assets and debts; thus, it did not affect the classification and management of future assets, which is the essence of a matrimonial agreement.
Finally, the provision for permanent alimony does not nullify the stipulations, because a husband and wife can enter into a valid contract prior to divorce that provides for permanent alimony. See Spencer v. Spencer, 472 So.2d 302 (La.App. 3 Cir.1985).
Therefore, we find that Karen and Kenneth entered into a valid interspousal contract in anticipation of divorce which was not contrary to law. Thus, we conclude that the trial court was not clearly wrong in denying *643 Kenneth's motion for a new trial. See Holloway v. Gulf Motors, Inc., 588 So.2d 1322 (La.App. 2 Cir.1991).

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the defendant-appellant, Kenneth Langley.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.