liPLOTKIN, Judge.
In this appeal of a medical malpractice ease, this Court is asked to do three things: (1) determine the validity of a compromise agreement involving a minor, (2) decide the proper award of damages for two different claimants, and (3) apportion a limited fund between" those two claimants.
I. Facts
These consolidated wrongful death and survival actions arose out of the May 11,1988 death of Mary Silvia Harden at Southern Baptist Hospital as a result of an undetected, untreated ruptured spleen. On August 28, 1991, the State of Louisiana, through the Department of Social Services, on behalf of Mrs. Harden’s adoptive son, plaintiff Eric Harden, filed suit against Southern Baptist. Two days later, Mrs. Harden’s husband, plaintiff Robert Harden, filed a similar suit against Southern Baptist, Rodger Pielet M.D., and the Louisiana Patient’s Compensation Fund (LPCF).
RThe claims were presented to a medical review panel, which found evidence of malpractice on the part of Southern Baptist. Southern Baptist admitted liability for Mrs. Harden’s death, and deposited $100,000 into the registry of the court; that sum represents the limits of liability for a health care provider under the provisions of LSA-R.S. 40:1299.42(B)(2).
The two consolidated cases were tried separately in February 1994. Erie Harden’s ease was decided by the trial judge, while Mr. Harden’s case was decided by a jury. Since liability had been previously admitted by the health care provider, the only issue at trial was the amount of damages. The only defendant was LPCF, whose liability is limited to $400,000 under the provisions of LSA-R.S. 40:1299.42(B)(1).
The jury awarded Mr. Harden a total of $1,015,703.05, itemized as follows:
Mrs. Harden’s pain and suffering 0.00
Loss of love and affection, society, consortium, services and enjoyment of life 415,000.00
Past loss of earnings and/or impairment of earning capacity 38,875.00
Future loss of earnings and impairment of earning capacity 55,000.00
Mrs. Harden’s loss of past and future earning capacity 270,000.00
Stipulated funeral expenses 3,828.05
Past and future mental anguish 150,000.00
Past and future psychological or medical treatment 83,000.00
Thereafter, the trial judge struck the $83,-000 jury award for past and future psychological or medical treatment of Mr. Harden, then entered an amended judgment awarding Eric Harden $160,000, and awarding Mr. Harden $240,000 of the $400,000 limited fund owed by the LPCF.[1] Further, the trial court *447 judgment apportioned the $100,000 deposited into the registry of the court by Southern Baptist, awarding $40,000 to Erie Harden and $60,000 to Mr. Harden.
|3The LPCF suspensively appealed the amended judgment on July 22, 1994, while Mr. Harden devolutively appealed the amended judgment on August 8, 1994. On December 12, 1994, Eric Harden answered the appeals, seeking an increase in his award.
While the judgment was on appeal, prior to the hearing of the appeal, the LPCF entered into a compromise agreement with Venus Hall Moore, tutrix on behalf of the minor claimant, Erie Harden, whose name had by that time been changed to Eric Albert Hall Moore when he was adopted by Ms. Moore. On August 17, 1994, the trial court approved that compromise agreement, pursuant to the La.C.C.P. art. 4265 requirement that compromise agreements impacting the rights of minors be approved by a court. Thereafter, pursuant to the terms of the compromise agreement, the LPCF paid Eric Harden $160,000, the exact amount awarded Eric Harden by the trial court judgment. The LPCF then filed a motion to dismiss the portion of its suspensive appeal relative to the award to Eric Harden.
On appeal, the LPCF challenges the award to Mr. Harden, claiming that the award was excessive for three reasons: (1) it improperly awarded past and future lost wages, (2) it improperly awarded Mrs. Harden’s past and future earning capacity, and (3) it improperly included duplicative awards for “loss of love and affection, society, consortium and service and enjoyment of life” and for “past and future mental anguish.”
Mr. Harden’s devolutive appeal challenges the validity of the compromise agreement between the LPCF and Erie Harden, as well as the apportionment of the limited fund between the two claimants. Additionally, Mr. Harden contests the trial court’s striking of the jury’s award for future medical and psychological care, and the trial court’s failure to award legal interest on the entire $500,000 award.
|4In his answer to the appeals, Eric Harden claims that, if the compromise agreement is invalid, he is entitled to an increase in his award.
We will consider the two legal issues raised by Mr. Harden’s appeal prior to considering the quantum of the award to Mr. Harden.
II. Validity of the compromise agreement
When the trial court signed the order authorizing Ms. Moore to compromise Eric Harden’s claim against the LPCF, it specifically noted as follows:
following the satisfaction of the judgment in favor of Venus Moore, there remains only the present value sum of $240,000 [together with interest] out of the Louisiana Patient’s Compensation Fund’s $400,-000.00 limitation of liability with which to satisfy that portion of the judgment in favor of plaintiff Robert A. Harden pending appeal.
Mr. Harden claims that the compromise agreement between the LPCF and Eric Harden is invalid because the trial court was without jurisdiction to approve the compromise. Further, Mr. Harden claims that the compromise improperly prejudiced his rights because it was rendered without notice to him and without giving him an opportunity to be heard. Mr. Harden also claims that LPCF’s liability may exceed the $400,000 cap because of its action in compromising Eric Harden’s claim.
A. Jurisdiction of the trial court
La.C.C.P. art. 2088, relative to the jurisdiction of the trial court in a case on appeal, provides, in pertinent part, as follows:
The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of devolutive |sappeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to....
*448 (Emphasis added.) The above language is followed by a list of ten specific actions over which a trial court retains jurisdiction in a case even after the filing of an order of appeal. Compromise of a ease or recognition of a compromise agreement is not specifically listed. Thus, Mr. Harden argues, the trial court had no authority to recognize the compromise agreement, making its order recognizing the compromise agreement an absolute nullity.
We disagree. Compromise agreements are strongly favored in Louisiana law. Walton v. Walton, 597 So.2d 479, 484 (La. App. 1st Cir.1992). That policy was explained in Walton as follows:
Compromise agreements between parties to avoid litigation are favored by law, and courts will not declare a settlement void without a clear showing that it violates good morals or public interest. Compromise settlements are not invalidated lightly in absence of bad faith, error or fraud.
Id. at 484. No allegations of bad faith, error, or fraud are made in the instant case, and no evidence of any of those circumstances exists.
Compromise agreements are defined and controlled by the provisions of La.C.C. art. 3071, which provides as follows:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable to being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
^(Emphasis added.) The only logical conclusion to be drawn from the boldfaced language in the above article is that a compromise agreement should be confected in the trial court. The obvious intent of the article is that parties to a judicial proceeding who choose to compromise their differences should be allowed to make a record of that compromise. Certainly, the article does not contemplate that a compromise agreement could be recited in open court or transcribed from the record in an appellate court. Generally, appellate courts are not the proper place for compromise agreements to be perfected. Appellate courts do not perform those types of functionary duties; such duties rest within the particular province of trial courts, which are capable of recording the compromise.
Realistically, however, neither a trial court nor an appellate court is typically involved in a compromise agreement; therefore, no Louisiana cases have determined whether the provisions of La.C.C.P. art. 2088 operate to divest a trial court of jurisdiction to approve or recognize a compromise agreement after an order of appeal is signed. However, the case law is clear that the trial court’s jurisdiction is divested by the provisions of La.C.CJP. art. 2088 only regarding those matters that are “reviewable on appeal,” meaning that the trial court’s jurisdiction generally continues in all matters except those falling into that category. In the instant ease, the judgment appealed does not mention the compromise and therefore the compromise is not “reviewable on appeal.”
Moreover, the caselaw is clear that the list of circumstances over which the trial court retains jurisdiction enumerated in La. C.C.P. art. 2088 is not intended to be exclusive. See Valet v. City of Hammond, 577 So.2d 155, 162 (La.App. 1st Cir.1991). Under the express provisions of the article, the trial court is not considered divested of jurisdiction to consider any issue that is “not reviewable on appeal.” This language, “not reviewable under the appeal,” has generally been 17interpreted to give the trial court continuing jurisdiction over all issues that are “unaffected by the appeal,” even if the issue is not specifically listed in La.C.C.P. art. 2088. Halley v. Guerriero, 577 So.2d 781, 783 (La.App.2d Cir.1991); see also Byles Welding & Tractor Co. v. Butts Sales & Service, Inc., 578 So.2d 246, 248 (La.App. 3d *449 Cir.1991). Thus, Mr. Harden’s argument is invalid.
We recognize that the situation faced by the trial court and the parties in the instant case is unusual. Typically, compromise of a claim following the trial court’s entry of a judgment, even while the judgment is on appeal, is perfected without any involvement by the trial or appellate courts. The parties simply negotiate a mutually-satisfactory compromise and file a joint motion to dismiss the appeal, which is routinely signed. The trial court’s involvement in the instant case was necessitated only by the fact that the compromise involved the rights of a minor; La. C.C.P. art. 4265 requires trial court approval prior to compromise of an action involving a minor. Because the compromise basically amounted to satisfaction of the trial court’s judgment against the LPCF in favor of the minor, the trial court approved the compromise.
Additionally, Mr. Harden’s appeal was de-volutive, not suspensive. Thus, the appeal filed by Mr. Harden did not suspend the effect of the judgment, meaning that, in the absence of the suspensive appeal filed by the LPCF, the LPCF would have been required to satisfy the judgment in favor of both Mr. Harden and Ms. Moore. Because Mr. Harden’s appeal does not prevent the LPCF from satisfying the judgment in favor of either of the claimants, Mr. Harden has no right to complain of the satisfaction of the judgment in favor of either claimant. Unquestionably, the effect of the compromise agreement between Ms. Moore and the LPCF was to satisfy the judgment in Ms. Moore’s favor. Only the LPCF filed a sus-pensive appeal; thus, only the LPCF has the right to complain on appeal | seoncerning any satisfaction of the judgment. Because the LPCF specifically moved the court to dismiss its suspensive appeal against one of the claimants, the trial court’s order recognizing the judgment was signed on the express request of the only party that has preserved its right to complain.
In addition to the fact that both the language of La.C.C.P. art. 2088 and the jurisprudence interpreting that article indicate that the trial court was not divested of jurisdiction to approve the compromise in the instant case, good policy reasons exist for allowing the trial court, rather than an appellate court, to approve the compromise, even if the judgment has been appealed. The trial court has heard all the evidence in the case and is familiar with the action, making it far better equipped to determine whether the compromise is in the best interests of the minor.
Further, La.C.C. art. 3077 provides generally that a transaction or compromise agreement “can not be opposed by an interested party who was not a party to the agreement.” In the instant case, Mr. Harden attempts to attack collaterally a compromise agreement to which he was not a party, an action clearly prohibited by the express provisions of the Louisiana Civil Code. For that reason also, Mr. Harden’s argument may not prevail. We find that the compromise agreement between the LPCF and Eric Harden is valid.[2]
19B. Prejudice of Mr. Harden’s rights
In brief, Mr. Harden argues that some special rule regarding compromise should be applied in the instant case based on the fact that the defendant’s liability is limited to $400,000, a sum much smaller than the damages suffered by the two claimants. Because of the limited liability imposed by *450 Louisiana’s Medical Malpractice statutes, Mr. Harden claims that the compromise agreement somehow prejudiced his right to recovery. Although the logic of Mr. Harden’s argument is obvious, this court cannot create a rule of law which simply does not exist. The fact that only a limited amount of funds are available to compensate all the victims of the medical malpractice cannot serve as authority to prevent the defendant from settling the suit brought by one of the claimants. Moreover, as discussed more fully below, Mr. Harden was not prejudiced by the compromise because the trial court’s apportionment of the limited funds was not manifestly erroneous and thus is not subject to modification on appeal. Accordingly, we find no merit in this argument.
C. Extension of LPCF’s liability
Mr. Harden also claims that the LPCF’s funds total liability should exceed $400,000 under the circumstances of the instant case because the limitation applies only to amounts for which the LPCF is “cast in judgment.” However, LSA-R.S. ■40:1299(42)(B)(1) provides specifically as follows:
The total amount recoverable for all malpractice claims for injuries to or death of a patient ... shall not exceed five hundred thousand dollars plus interest and cost.
Thus, we find no merit in Mr. Harden’s argument on this issue.
| iqIII. Apportionment of the fund
Although this issue is technically made moot by the fact that the compromise agreement between the LPCF and Erie Harden is valid, we will briefly address Mr. Harden’s argument that the trial court improperly apportioned the limited fund in order to show the fallacies in Mr. Harden’s argument that the compromise agreement prejudiced his rights. Mr. Harden claims that he should have received 82.3 percent of the total $500,-000 award and that Eric Harden should have received only 17.63 percent. In order to reach these figures, Mr. Harden assumes that the trial judge found that Eric Harden suffered only the $200,000 in damages which the trial court actually awarded him from the $500,000 limited fund. Mr. Harden reaches those percentages by comparing his $934,-243.05[3] jury award with Eric Harden’s $200,-000 award.
However, a close review of the record reveals that Mr. Harden’s argument is misplaced. As previously stated, the jury awarded Mr. Harden itemized damages total-ling $1,015,703.05. The trial court originally issued judgment in favor of Mr. Harden “in the full and true sum of $1,015,703.05,” which it later reduced by striking the $83,000 award for past and future psychological or medical treatment. The trial judge then issued an amended judgment in which it reduced Mr. Harden’s damages to $300,000 and awarded Eric Harden $200,000 in damages. The only logical interpretation of the trial court’s actions in issuing the amended judgment is that she compared the damages suffered by the two claimants, determined that Mr. Harden suffered 60 percent of the total damages and that Erie Harden suffered 40 percent of the total damages, then entered judgment in accordance with those percentages.
[ nMr. Harden’s assumption that the trial court found that Erie Harden’s total damages were $200,000 is simply not supported by the record. There is no indication that the trial judge reduced Mr. Harden’s damages, but awarded Eric Harden the full amount of damages suffered. The evidence indicates instead that the trial judge found Eric Harden’s total damages to be hundreds of thousands of dollars, then compared his total damages to Mr. Harden’s total damages to get a percentage for apportioning the limited fund. The trial judge obviously reduced the total damages due both claimants to accommodate the limited fund. Nothing in Louisiana statutory or case law requires the trial judge to enumerate a claimant’s total damages prior to reducing those damages. Because the amount the trial court awarded Eric Harden is consistent with the percentage of damages suffered by Eric Harden, the *451 compromise agreement did not prejudice Mr. Harden’s rights.
IV. Mr. Harden’s damages
On appeal, the LPCF seeks modification of the award to Mr. Harden, claiming that it was excessive in a number of respects, and seeking reduction of the $300,000 total award to Mr. Harden.
A. Mr. Harden’s past and future lost wages
First, the LPCF claims that the trial court improperly included an award for Mr. Harden’s past and future lost wages caused by the death of his wife. We agree. Mr. Harden admitted at trial that the only thing preventing his return to gainful employment in the job he held prior to his wife’s death is his alcoholism. Further, Mr. Harden admitted that he refused to participate in free counseling offered him by the State of Louisiana prior to his surrender of his adoptive son, Eric Harden. The record indicates that Mr. Harden also refused an offer of free | ^medical intervention, including hospitalization, if necessary, at the Veterans Administration Hospital. Because Mr. Harden failed to mitigate his damages for lost past and future wages, we amend the judgment to delete the $38,875 for past loss of earning and impairment of earning capacity.
B. Mrs. Harden’s lost past and future earning capacity
Second, the LPCF claims that the trial court improperly awarded Mrs. Harden’s lost past and future earning capacity because the record contained no evidence that Mrs. Harden had ever worked in Louisiana or that she had ever intended to return to work in the future. Again, we agree. Mrs. Harden’s employment as a computer operator ceased at or about the time she and Mr. Harden adopted Eric Harden. Subsequent to that time, approximately one year prior to her death, Mrs. Harden had obtained a certificate showing she had participated in training as a “medical assistant,” but the evidence is uneontroverted that she never worked in that field. Mr. Harden admitted at trial that he and Mrs. Harden had agreed that she would not work, and that she would be a fulltime homemaker and mother to her adopted son. Mr. Harden said that they had intended that she would someday return to work, but gave no indication of when she might have done so, what job might have been available, or whether she would have engaged in full- or part-time employment. The record evidence is insufficient to support the $270,000 jury award for loss of past and future earning capacity; Mr. Harden’s award is amended to delete this amount.

C.Duplication of damages

Third, the LPCF claims that the trial court improperly included duplicative awards for “loss of love and affection, society, consortium and service and | ^enjoyment of life” and for “past and future mental anguish.” Although this court held in Koepp v. Sea-Land Service, Inc., 93-2562 (La.App. 4th Cir. 11/17/94), 645 So.2d 1269 that damages for mental pain and suffering and damages for loss of enjoyment of life are duplicative, the awards made by the jury in the instant case are distinguishable from the awards made in the Koepp case. In this case, the two elements of damages are not duplicative.
The first item of damages—the $415,000 award—is obviously a loss of consortium award, despite the fact the title given by the trial court contains the phrase “loss of enjoyment of life.” The jury charges and the jury interrogatories both support this conclusion. No one has challenged the adequacy or accuracy of the jury charges, the jury interrogatories, or the classification of damages. The only issue raised by the LPCF is the argument that the use of the language “loss of enjoyment of life” in the loss of consortium element of damages makes that award duplicative of the award for past and future mental pain and suffering. The jury charge and interrogatories clearly indicate that the $415,000 award is for what is traditionally referred to only as loss of consortium.
Certainly, Mr. Harden is entitled to recover both loss of consortium and past and future mental pain and suffering. Accordingly, both the $415,000 award to Mr. Harden for “loss of love and affection, society, *452 consortium and service and enjoyment of life” and the $150,000 award for past and future mental pain and suffering are affirmed.
D. Past and future psychological or medical treatment
Mr. Harden claims that this court should increase the quantum of his award by reinstating the $83,000 award for his past and future psychological or medical treatment. In so arguing, Mr. Harden urges this court to extend the Medical | ^Malpractice Act’s exclusion of future medical expenses from the $500,000 cap to include medical or psychological expenses suffered by him as a third-party victim of the malpractice. In support of this claim, Mr. Harden points to the well-established principle that the Act is to be strictly construed in favor of tort claimants. Nonetheless, we disagree.
Both the language of the statute and the jurisprudence interpreting the statute have consistently held that the exclusion from the cap applies only to medical expenses incurred by the patient injured by the malpractice, not to third-party victims. See Hutchinson v. Patel, 93-2156 (La. 5/23/94), 637 So.2d 415. The ease cited by Mr. Harden, A Copeland Enterprises, Inc. v. Slidell Memorial Hospital, 93-0987 (La.App. 1st Cir. 4/8/94), 637 So.2d 1087, reversed, 94-2011 (La. 6/30/95), 657 So.2d 1292, does not support his position since it does not involve recovery of a third party’s medical expenses. We find no merit in Mr. Harden’s argument on this issue.
E. Legal interest
However, we do agree with Mr. Harden’s argument that legal interest is due on the entire $500,000 judgment, including the $100,000 deposited by Southern Baptist Hospital into the registry of the court. Generally, the deposit of funds in the registry of the court stops the running of interest. See LaGraize v. Bickham, 391 So.2d 1185 (La. App. 4th Cir.1980). However, this rule must be modified by reference to two provisions of the Louisiana Medical Malpractice Act.
LSA-R.S. 40:1299.47 provides that legal interest shall accrue from the date of filing the complaint with the LPCF Oversight Board. LSA-R.S. 40:1299.42(B) provides that the $500,000 cap on medical malpractice recovery excludes interest and costs. Although no Louisiana case has addressed the reconciliation of these | ^principles, the federal Fifth Circuit Court of Appeal in Castillo v. Montelepre, Inc., 999 F.2d 931 (5th Cir.1993) allowed recovery of interest on the entire $500,000 malpractice judgment although the plaintiff had settled his claim against the doctors for $100,000. We agree with the reasoning applied in that case and amend the judgment to include interest on the entire $500,000 award.
Accordingly, the original trial court judgment in favor of Mr. Harden is amended to delete both the $55,000 award for Mr. Harden’s future loss of earning and impairment of earning capacity and the $270,000 award for Mrs. Harden’s loss of past and future earning capacity. Mr. Harden’s total award is therefore $568,828.05. However, because this amount far exceeds the $300,000 awarded to Mr. Harden in the amended judgment, the amended trial court judgment is affirmed, but amended to award interest from the date the complaint was filed with the LPCF Oversight Board and costs.
V. Conclusion
Accordingly, the amended trial court judgment is affirmed, and amended to award Mr. Harden legal interest on the entire $300,000 awarded to him, plus costs. In all other respects, the amended trial court judgment is affirmed.

AMENDED AND AFFIRMED.

WALTZER, J., concurs in part and dissents in part with reasons.
MURRAY, J., concurs.

. The judgment also granted judgment in favor of intervenors for attorney fees in an amount to be fixed.

. As noted, this case involves a final, binding, court-approved compromise agreement between a minor and the only defendant. Neither the minor nor his tutrix has any remaining interest in the appeal. Nevertheless, the tutrix was allowed to file, on behalf of the minor, both an answer to the appeal and a brief in support of that answer, which should not have been allowed. Presumably, the tutrix was allowed to file the answer because of the issue raised by Mr. Harden's devolutive appeal concerning the validity of the compromise. If the compromise was invalid, the tutrix claims, this Court should consider whether the trial court abused its discretion by awarding a greater percentage of the recovery to Mr. Harden than to Eric. The tutrix fails to cite any authority for its implied argument that minors are more entitled to recover damages resulting from the death of their mothers than husbands are entitled to recover for damages resulting from the death of their wives. Because we have found that the compromise argument is valid, we pretermit further discussion of this issue.

. The calculations by which Mr. Harden reached this figure are unclear.