ROBERT JOSEPH ADAMS, SR.
v.
MARY RICHOUX ADAMS
2007 CA 0595
Court of Appeal of Louisiana, First Circuit
February 20, 2008.
LESLIE J. CLEMENT, Jr., Thibodaux, Louisiana, Counsel for Plaintiff/Appellant, Robert Joseph Adams, Sr.
STEPHEN E. CAILLOUET, THIBODAUX, Louisiana, Counsel for Defendant/Appellee, Mary Richoux Adams.
Before: PARRO, KUHN and DOWNING, JJ.
KUHN, J.
Plaintiff-appellant, Robert Joseph Adams (Robert), appeals the trial court's judgment denying his motion to enforce a compromise partitioning the community of acquets and gains in accordance with a stipulation entered into in open court in an earlier divorce action, which was subsequently dismissed after he reconciled with defendant-appellee, Mary Richoux Adams (Mary). For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Robert and Mary were married in 1959. On October 23, 2002, Robert filed a suit, seeking a divorce from Mary. The parties subsequently reconciled and the lawsuit was dismissed. On May 23, 2003, Robert filed a second suit for divorce, which was also dismissed after a reconciliation of the parties. Apparently, Robert filed a third action for divorce, which was dismissed after the parties yet again reconciled. On September 19, 2005, Robert instituted this fourth divorce proceeding, and by judgment dated November 8, 2005, the parties were divorced.
The operative facts in this appeal arise from the parties' actions while the second divorce litigation was pending. In connection with that proceeding, the parties were in court at a motion hearing on July 24, 2003,[1] when they reached "an agreement with regards to personal affect[s] of the home  in the home." Mary's attorney stated:
[Mary] will be allowed to remove from the home, her binoculars that she received from her father, a table that she received from her father, the hutch as well as the dishes in the hutch, dolls, her personal clothing, the curio cabinet, her jewelry and any other female personal items she may have at the home.
She will in addition get an amount of $25,000.00 in cash from [Robert] as well as the car practically in her possession, a 1997 Avalon XL. He will assume all the liabilities of the community as well as receive all the remaining assets and we will prepare a community property settlement and file that as soon as we get all the documentation and the specifics.
Both Mary and Robert indicated that they had heard, understood, and agreed to the terms of the agreement. Mary's attorney then said, "We just want to add one more thing. We need a time limit for her obtaining her  okay within two weeks she is to receive the $25,000.00." Again, on the record, the parties agreed to that additional term.
Although Mary's attorney drafted and prepared a consent judgment setting forth the terms stipulated to in open court as well as a community property settlement, the parties never signed either document since they had reconciled at some time after the July 24, 2003 hearing. A joint motion to dismiss the second divorce action stated that the parties "move and desire to have [the court] dismiss this action based on the fact that the parties reconciled for approximately two weeks in August 2003. The parties have once again separated and [Robert] will be filing a new Petition for Divorce based on the present situation of living separate and apart."
In the fourth divorce action, Robert filed a motion seeking rendition of a judgment partitioning the community, most particularly the house, in accordance with the stipulation recited in open court on July 24, 2003. After a hearing, the trial court denied the motion, and Robert devolutively appealed.[2]

DISCUSSION
It is undisputed that Robert paid $25,000 to Mary and paid the balances of two community property debts. Likewise, the parties agree that at some time after July 24, 2003, they reconciled and that Mary did not give the $25,000 back to Robert. Additionally, the parties acknowledge that they did not transfer title of the Avalon to Mary, she did not remove from the household the items specified in the agreement, and she did not sign anything that transferred the title of the house to Robert.
On appeal, Robert asserts that the July 24, 2003 stipulation constituted a valid compromise entered into between the parties and, therefore, is enforceable. Noting that during the existence of the marriage a spouse may voluntarily partition community property, in whole or part, without court approval, he urges the trial court erred in concluding that the agreement was a prohibited matrimonial agreement.
A matrimonial agreement is a contract which establishes a regime of separate property or modifies or terminates the matrimonial regime. La. C.C. art. 2328. A matrimonial regime is a system of principles and rules governing the ownership and management of the property of married persons as between themselves and third persons. La. C.C. art. 2325. The reference to a "system" contemplates a "methodic arrangement of rules" rather than an isolated or single transaction; thus, a matrimonial agreement affects the classification and management of future property. Langley v. Langley, 94-726, p. 2 (La. App. 3d Cir. 12/7/94), 647 So.2d 640, 641 (citing Katherine S. Spaht & W. Lee Hargrave, Matrimonial Regimes § 8.6 at 380-81, in 16 Louisiana Civil Law Treatise (1989)); Biondo v. Biondo, 99-0890, p. 6 (La. App. 1st Cir. 7/31/00), 769 So.2d 94, 100. During marriage, spouses may enter into a matrimonial agreement that modifies or terminates a matrimonial regime only upon joint petition and a finding by the court that this serves their best interests and that they understand the governing principles and rules. La. C.C. art. 2329.
The 1980 matrimonial regimes revision repealed La. C.C. art. 1790, which generally prohibited interspousal contracts; therefore, spouses can now contract with each other to the same extent as persons who are not married. Langley, 94-726 at p. 3, 647 So.2d at 642 (citing Spaht and Hargrave, Matrimonial Regimes § 8.10 at 395-96 in 16 Louisiana Civil Law Treatise. These contracts do not require judicial approval. Id., § 8.6 at 380. While a matrimonial agreement affects the classification and management of future assets, interspousal contracts affect only existing assets and debts, and spouses who are anticipating a divorce can enter into an interspousal contract that divides existing assets and debts without judicial approval. Id., § 8.6 at 381 and § 8.8 at 390.
Thus, Robert is correct in asserting that agreements between spouses, which address only the division of their property and do not purport to establish a methodic arrangement of rules, are permissible interspousal agreements under the legislation. See La. C.C. art. 2336; see e.g., Langley, 94-726 at p. 4, 647 So.2d at 642 (upholding the validity of an agreement entered into between the spouses in anticipation of divorce, which divided existing assets and debts and did not affect the classification and management of future assets).
But this does not end our inquiry. In this case, although the parties entered into the agreement in anticipation of divorce, the divorce did not occur because the parties reconciled.[3]
On July 24, 2003, when the parties recited in open court the terms of the agreement they had reached in the divorce proceeding prior to their reconciliation,[4] La. C.C. art. 3071 stated:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. This agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
Although as a general rule a compromise cannot be rescinded for an error of law, an error that concerns the cause of the agreement may serve as a basis for nullification of an agreement. See La. C.C. arts. 1949 & 1950.[5] An error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949.
The trial court determined, "[t]he evidence proved it is more probable than not that [Robert and Mary] would not have reached an agreement to partition their community property if the legal regime of community property was not also terminated." And the evidence overwhelmingly supports a finding that the parties' cause for entering into the agreement was to terminate the community, which did not occur because the parties reconciled afterwards.
Robert testified that on July 24, 2003, it was his plan to divorce Mary. He agreed that at that time, it was his intent to terminate their community and to get a divorce and that when he and Mary discussed the issues pertaining to the property settlement, it was his intention to obtain a divorce. Robert explained that on July 24, 2003, when he entered the agreement, he knew that he and Mary were going to end the marriage.
Similarly, Mary stated that on July 24, 2003, she entered the agreement with the understanding that the parties would be divorcing and thought that the divorce and the settlement were "altogether on that day." She did not understand that the agreement was resolving property rights between the parties independent of the divorce. Mary explained that after the reconciliation, she thought the parties would be together for the rest of their lives and that she never considered the stipulation they had entered into on July 24, 2003, as valid separate from the divorce proceeding. Neither of the parties' attorneys ever advised Mary that if she and Robert reconciled, the stipulation would nevertheless form a valid contract or that the community property was divided as of that date. According to Mary's testimony, had she known she and Robert would reconcile after July 24, 2003, she would not have entered into the agreement.
The trial court's factual finding that Robert and Mary would not have reached an agreement to partition their community property if the legal regime of community property was not also terminated is reasonably supported by the evidence and, therefore, is not manifestly erroneous. See Stobart v. State, Dep't of Transp. and Dev., 617 So.2d 880, 882 n.2 (La. 1993). Thus, the parties' belief that the stipulation entered into on July 24, 2003, would terminate their community property regime precludes the requisite consent necessary to make the compromise enforceable. See La. C.C. arts. 1949 & 1950;[6]see also Lyons Milling Co. v. Cusimano, 161 La. 198, 205-06, 108 So. 414, 416 (1926)(because of mutual mistake in sale of flour, either party may rescind agreement); Bergeron v. Port Allen Mortuary, Inc., 178 So.2d 442, 448 (La. App. 1st Cir.), writs denied, 179 So.2d 430 (1965)(plaintiff who signed a release in favor of tortfeasor believing that she was signing papers for funeral arrangements signed through error, and release was of no effect); and Katherine S. Spaht & Richard D. Moreno, Matrimonial Regimes § 8.12 at 830, in 16 Louisiana Civil Law Treatise (2007)(where partition of spouses' community property was dependent on the validity of the separation judgment, upon failure of that separation judgment, there was a failure of cause).[7] For this reason, the trial court in this case correctly concluded that the compromise was not enforceable.
Moreover, the agreement recited in open court on July 24, 2003, constitutes a transfer of immovable property, and as such, must meet the requirements for a sale of immovable property. See Pace v. McManus, 463 So.2d 85, 87 (La. App. 3d Cir. 1985). Such a contract must be made by authentic act or by act under private signature. La. C.C. art. 1839.
Additionally, because Article 2336 does not specify any formal requirements for a voluntary partition of the community, the general rules regulating the formality and recordation requirements for conventional obligations apply. See Biondo, 99-0890 at p. 8, 769 So.2d at 101. Thus, a partition affecting community property would have to comply with the requirements of La. C.C. art. 1839. See Spaht and Moreno, Matrimonial Regimes § 4.14 at 347 in 16 Louisiana Civil Law Treatise. The stipulation, recited in open court, was neither made by authentic act nor by act under private signature. As such, it is not enforceable to transfer ownership of the house from Mary to Robert.[8]

DECREE
For these reasons, we affirm the trial court's judgment, denying the rule to enforce the agreement entered into on July 24, 2003. Appeal costs are assessed against plaintiff-appellant, Robert Joseph Adams.
AFFIRMED.
DOWNING, J., dissents and assigns reasons
I disagree with the majority's conclusion that the compromise between Mr. and Mrs. Adams can be rescinded due to the existence of a vice of consent, namely an error of law. I do agree with the majority opinion insofar as it concludes that, contrary to the trial court's conclusion, Mr. and Mrs. Adams had a right to separate their existing assets and debts pursuant to La. C.C. art. 3071.[1] Mr. and Mrs. Adams recited their agreement in open court, as set forth in the majority opinion, and it can be transcribed from the record of the proceeding. As such, the agreement is valid and enforceable. I disagree with the majority's analysis in several regards.
First, the majority erroneously concludes: "the parties' belief that the stipulation entered into on July 24, 2003, would terminate their community property regime precludes the requisite consent necessary to make the compromise enforceable." The asserted belief that the stipulation would terminate the community property regime is an error of law. It is not a factual dispute. Louisiana's law is well settled in this regard: "Compromise agreements cannot be attacked for an error in law or for lesion. However, compromise agreements can be contested for errors in calculation, error in the person, fraud, violence or an error on the matter in dispute." (Citations omitted.) Smith v. Leger, 439 So.2d 1203, 1206 (La.App. 1 Cir. 1983). See also former La. C.C. arts. 3078-79 and current Art. 3082.[2] Therefore, the agreement recited in open court should be enforced.
Second, although our inquiry in this regard should be at an end, I note that the trial court made no finding regarding an error that concerns cause. Rather, it concluded that the contract was null under La. C.C. art. 2030 since it believed the agreement violated a rule of public order. In this context, the trial court concluded that Mr. and Mrs. Adams would not have agreed to partition their property if the community was not also legally terminated. Specifically, the trial court stated:
Louisiana Civil Code Article 2034 states that "[n]ullity of a provision does not render the whole contract null unless, from the nature of the provision or the intention of the parties, it can be presumed that he contract would not have been made without the null provision." The evidence proved it is more probable than not that Mr. and Mrs. Adams would not have reached an agreement to partition their community property if the legal regime of community property was not also terminated.
Error and cause are not contemplated in this finding. And the majority implicitly, and correctly, rejected the trial court's legal conclusion that the agreement was an absolute nullity when it concluded that Mr. and Mrs. Adams would have a legally enforceable agreement barring the asserted vice of consent. Further, the trial court's error certainly interdicted its fact finding in that it found no facts regarding error or cause.
Further, Mr. and Mrs. Adams both testified that they did not fully understand the difference between partitioning their property and terminating the community of acquets and gains. Telling is the testimony of Ms. Adams' attorney who represented her during the proceeding in which they entered their compromise into the record. He testified that, "This was not intended to terminate the community. It was intended to partition the community property pending a divorce." He further testified that the agreement "could not have been an agreement to terminate the community because the community had not been terminated." He also testified that, "She just wanted out and she wanted a certain amount."
The facts of this record show that Mr. and Mrs. Adams separated their property as they are legally allowed to do in accordance with La. C.C. art. 2336. The community of acquets and gains would have been terminated shortly thereafter had the parties not reconciled. An unexpected reconciliation cannot be the basis for a conclusion that error concerning the cause of the agreement retroactively vitiated Mr. or Mrs. Adams' consent.
Third, I disagree with the majority's conclusion that the agreement is unenforceable because of nonconformity with the fonnalities of La.C.C. art. 1839. Mr. and Mrs. Adams' agreement specifically addressed their home and was recited in open court. It is capable of being transcribed from the record of the proceeding. Accordingly, it is enforceable under La. C.C. art. 3071, the article addressing transaction or compromise. In pertinent part, this article states: "This agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form."
Here, Ms. Walton did not complain about any inadequacy of the property description, either at the trial court or on appeal. In Walton v. Walton, 597 So.2d 479, 481 (La.App. 1 Cir. 1992), the parties stipulated that Ms. Walton would pay Mr. Walton a sum to purchase her interest in the "family home," and that such payment would act as a conveyance in his interest in the "family home." This court concluded that these stipulations formed a part of a valid transfer and compromise according to La. C.C. art. 3071. It further concluded: "Thus, the agreement confers upon each of them the right to the judicial enforcement of its performance." Id., 597 So.2d at 483.
Here, both Mr. and Mrs. Walton testified at the time they entered the agreement that they heard, understood and agreed to it. As in Walton, the agreement was fully disclosed to Mr. and Mrs. Adams and they were apprised of their rights. As such, the agreement is enforceable between Mr. and Mrs. Adams, even without La. C.C. art. 1839 formalities. See Id., 597 So.2d at 484.
We should enforce the compromise agreement between Mr. and Mrs. Adams.
NOTES
[1] Although the transcript from the hearing indicates it was conducted on June 23, 2003, the parties stipulated, and the court's minutes from that hearing indicated, that the matter was actually taken up on July 24, 2003.
[2] Plaintiff filed this rule after obtaining the judgment of divorce. Although he subsequently filed a supplemental rule seeking to have the money he tendered to defendant returned to him in the event that the trial court denied his rule to enforce the stipulation entered into on July 24, 2003, he voluntarily dismissed that claim. Thus, the only claim asserted by the parties was disposed of by the trial court's judgment, denying the motion to enforce the alleged compromise, and the judgment is final. See La. C.C.P. art. 1841.
[3] The cause of action for divorce is extinguished by the reconciliation of the parties. La. C.C. art. 104.
[4] La. C.C. art. 3071 was subsequently modified by 2007 La. Acts, No. 138, § 1. This modification did not change the law. La. C.C. art. 3071, Revision Comments  2007, Comment (a).
[5] See La. C.C. art. 3078 prior to 2007 La. Acts, No. 138, § 1 ("Transactions have, between the interested parties, a force equal to the authority of things adjudged. They cannot be attacked on account of any error in law..."). See also La. C.C. art. 3082 subsequent to its enactment by 2007 La. Acts 2007, No. 138, § 1 ("A compromise may be rescinded for error, fraud, and other grounds for the annulment of contracts. Nevertheless, a compromise cannot be rescinded on grounds of error of law ...").
[6] See n.5, supra.
[7] See Petrovich v. Petrovich, 556 So.2d 281, 283-84 (La. App. 4th Cir.), writs denied, 559 So.2d 1377, 1979 (La. 1990).
[8] Because we have found that Mary is entitled to rescind the agreement recited in open court on July 24, 2003, for failure of cause, we find it unnecessary to discuss the effects of the lack of proper form of the attempted transfer and pretermit that discussion.
[1] The text of this article is found in the majority opinion.
[2] Former Article 3078 and current Art. 3082 are discussed in note 5 in the majority opinion. Former Art. 3079 provided as follows:

A transaction may be rescinded, notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence.